# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EDWIN DANTREL MERIDY,

                    Petitioner,                 Case Number: 2:08-CV-15249

v.                                       HON. DENISE PAGE HOOD

NICK J. LUDWICK,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Edwin Daniel Meridy filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is a state inmate currently incarcerated at the Mound Correctional Facility in Detroit, Michigan, challenges his convictions for second-degree murder, felon in possession of a firearm, and felony firearm. He raises five claims for relief. Respondent argues that several of the claims are procedurally defaulted and that all of the claims are meritless. For the reasons stated, the Court denies the petition and denies a certificate of appealability.

## I.     Background

Petitioner's convictions arise from the shooting death of Stephen Kimble (also known as Steve Man) on August 23, 2004. Before the shooting, Kimble was

hanging out at the Buss Housing Projects in Benton Harbor, with Izear Hall, Jr., Demarcus Greely, Glenn Reed, Petitioner, and several others. *See* 2/17/05 Tr. At 88 (ECF No. 9-7, Pg. ID 1132). The men were hanging out in the parking lot near Petitioner's car. *Id.* Petitioner and Reed began arguing. *Id.* at 853-54 (Pg. ID 1137-38). At some point, Petitioner grabbed Reed, who was sitting on the hood of Petitioner's vehicle, and threw him off the vehicle. *Id.* at 854 (Pg. ID 1138). Kimble approached and defended Reed. *Id.* at 854-55 (Pg. ID 1138-39). Kimble argued with Petitioner and several others who attempted to act as peacemakers. *Id.* Kimble reportedly told Reed to get a gun. *See* 2/16/05 Tr. at 639, 652 (Pg. ID 923, 936). Eventually, Greely calmed everyone down. 2/17/05 Tr. at 856 (ECF No. 9-7, Pg. ID 1140). Hall and Kimble then left the area to purchase alcohol. *Id.* at 856-57 (Pg. ID 1140-41). They returned to the parking lot ten to fifteen minutes later. *Id.* at 859 (Pg. ID 1143). Kimble showed Hall a sawed off rifle, which he placed in a barbeque grill so no one would steal it. *Id.* at 862 (Pg. ID 1146). According to Hall, he then heard a gunshot. *Id.* He saw Petitioner walking toward them with a gun in his hand. *Id.* at 863 (Pg. ID 1147). Kimble ran around the car, chased by Petitioner. *Id.* at 864 (Pg. ID 1148). Hall heard another gunshot. *Id.* Kimble ran between two buildings; Petitioner followed him. *Id.* at 867 (Pg. ID 1151). Hall lost sight of the men but heard four more gunshots. *Id.* Petitioner

2

returned to the parking lot alone, still holding the gun. *Id.* He then left the area. *Id.*

Calvin Bowman testified that he woke up in the middle of the night on the night of the shooting, looked out the window, and saw Petitioner shoot Kimble. *See* 2/15/05 Tr. at 499-505 (ECF No. 9-5, Pg. ID 783-789). Sonya Bridgeman testified that she was walking through the entrance to the housing projects when she heard four or five gunshots. *Id.* at 557 (Pg. ID 841). She saw Petitioner running away as she was entering. *Id.* at 560 (Pg. ID 844). He told her not to enter because "[t]hey shooting." *Id.*

Police responded to the report of gunfire. They searched the area but, hindered by the lack of lighting, failed to find Kimble. See 2/16/05 Tr. at 801 (ECF No. 9-6, Pg. ID 1085). Sometime later, a resident found Kimble's body and police returned to the area. *See* 2/15/05 Tr. at 388 (ECF No. 9-5, Pg. ID 672). He had been shot at least four times. *See* 2/14/05 Tr. at 278 (ECF No. 9-4, Pg. ID 562). The spent bullets recovered from Kimble's body were consistent with a .38 caliber gun. A sawed-off .22 caliber bolt-action rifle was recovered hidden in a barbeque grill not far from where Kimble was shot. 2/16/05 Tr. at 743, 745 (ECF No. 9-6, Pg. ID 1027, 1029). That rifle, however, could not have fired the spent bullets recovered from Kimble's body. *Id.*

Petitioner testified in his own defense at trial. He admitted pulling Reed off of his car. 2/17/05 Tr. at 1090-92 (ECF No. 9-7, Pg. ID 1376-78). He denied shooting Kimble and testified that, at the time of the shooting, he was at his girlfriend's house. *Id.* at 1098-1100 (Pg. ID 1383-1385).

Following a jury trial in Berrien County Circuit Court, Petitioner was convicted of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. On March 28, 2005, he was sentenced to 35 to 75 years' imprisonment for the second-degree murder conviction, 3 to 10 years' imprisonment for the felon-in-possession conviction, and 2 years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims: (i) insufficient evidence; (ii) verdict against the great weight of the evidence; (iii) trial court errors denied Petitioner a fair trial; (iv) prosecutorial misconduct; (v) ineffective assistance of trial counsel; and (vi) newly discovered evidence warrants a new trial. Petitioner presented a *pro per* supplemental brief raising these additional claims: (i) ineffective assistance of trial and appellate counsel; (ii) prosecutorial misconduct; (iii) lack of credible evidence to support the testimony of Mr. Bowman or Mr. Hall; (iv) inaccurate information relied on in sentencing; and (v) *Blakely* violation. The Michigan Court of Appeals

affirmed Petitioner's convictions. *People v. Meridy*, No. 262371, 2007 WL 1429630 (Mich. Ct. App. May 15, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Meridy*, 481 Mich. 876 (Mich. May 27, 2008).

Petitioner then filed a habeas corpus petition. He also filed a motion to hold the petition in abeyance, which the Court granted. *See* 3/4/11 Order (ECF No. 13).

Petitioner filed a motion for relief from judgment in the trial court. He raised these claims: (i) new trial should be granted on the basis of recanting witness affidavit; and (ii) verdict form did not give jury the option of finding Petitioner not guilty of second-degree murder and appellate counsel was ineffective in failing to raise this claim. The trial court denied the motion. *See* 3/12/12 (Order, ECF No. 26-9). The Michigan Court of Appeals denied Petitioner's application for leave to appeal, *People v. Meridy* No. 309341 (Mich. Ct. App. Sept. 23, 2013), as did the Michigan Supreme Court. *People v. Meridy*, 495 Mich. 917 (2013).

Petitioner moved for this Court to reopen the habeas corpus proceeding. The Court granted the motion. *See* 5/24/14 Order (ECF No. 17). Petitioner filed an amended petition and Respondent filed an answer in opposition. The petition

raises these claims:

I. Petitioner was deprived of his constitutional right to a fair and impartial trial, contrary to state and federal law, by the admission of five autopsy photographs of the victim that were not relevant to prove a material fact in the case, and where any probative value of the evidence was substantially outweighed by the danger of unfair prejudice to the defense.

II. Petitioner was deprived of his constitutional right to a fair trial, due to the cumulative effects of egregious prosecutorial misconduct that was clearly intended to impermissibly vouch for Petitioner's guilt, denigrate the defense, bolster the integrity of the investigation, and mislead the jury to convict for improper reasons.

III. Petitioner was deprived of his constitutional right to a jury trial because the jury was not given the choice of finding him not guilty of the specific crime of second-degree murder, the offense he was eventually convicted of, where the trial court's oral instructions and the jury verdict form left only one option for the jury to choose – guilty of second-degree murder.

IV. Petitioner was denied his right to effective assistance of counsel, at trial and on appeal, and his due process right to a full and adequate direct appeal, due to the constitutionally deficient actions and omissions of his attorneys, and when an "off-the-record" bench trial conference regarding the jury-verdict form was not transcribed for appeal.

V. Petitioner was denied his constitutional right to a fair trial and due process of the law, where new reliable evidence that undermines the confidence in the verdict reveals that his conviction for second-degree murder was procured through the use of perjured testimony by two key witnesses who were threatened and coerced by police investigators, one who has been convicted and sentenced to prison on corruption-based charges, and where Petitioner can make out a viable claim that he is actually innocent of the crimes he stands convicted of.

## II.     Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 408.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been

rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Claim One: Admission of Autopsy Photographs

In his first claim for habeas relief, Petitioner argues that the admission of autopsy photographs denied him his right to a fair trial. He argues that the photographs were irrelevant and that their probative value was substantially outweighed by their unfair prejudice to Petitioner. Respondent argues that this claim is procedurally defaulted. The Court finds that the interests of judicial economy are best served by addressing the merits of this claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.").

The Michigan Court of Appeals held that the admission of these photographs was proper under Michigan Rule of Evidence 403 because the photographs were relevant and not unfairly prejudicial. *People v. Meridy*, 2007 WL 1429630 at *2. The Sixth Circuit has held that the introduction of graphic photographs of a victim in a murder case does not offend the Constitution when there is some legitimate evidentiary purpose for the photographs' admission. *See, e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used to illustrate

the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative").

Here, the photographs were relevant to illustrate the pathologist's testimony regarding his autopsy of the victim. The pathologist used the photographs to illustrate the nature of Petitioner's injuries and the path of the bullets. The photographs were less inflammatory than those in *Biros,* and related to the circumstances surrounding the shooting. *Biros*, 422 F.3d at 391. Petitioner has not established a due process violation arising from admission of the photographs.

### B.     Claim Two: Prosecutorial Misconduct

Petitioner's second claim for relief raises allegations of prosecutorial misconduct. Specifically, Petitioner claims that the prosecutor committed misconduct by vouching for the honor and prestige of the police, denigrating the defense by disparaging Petitioner's decision to proceed to trial, eliciting improper testimony, and arguing facts not in evidence.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper

comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181, quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47, quoting *Harrington*, 562 U.S. at 103.

First, Petitioner argues that the prosecutor committed misconduct by vouching for the integrity and bravery of the police during *voir dire*. After a prospective juror noted that several family members had previously been arrested, the prosecutor asked if the prospective juror had any feelings about the Benton Harbor Police Department. 2/14/05 Tr. at 72 (ECF No. 9-4, Pg. ID 356). The prospective juror responded that he did not. *Id.* The prosecutor asked: "Would you agree that they're brave individuals who are trying to do a very difficult job?" *Id.* at 72-73 (Pg. ID 356-57). The prospective juror agreed. *Id.* The Michigan Court of Appeals noted that the *voir dire* process is designed to uncover bias and that the prosecutor's question addressed that goal. *Meridy*, 2007 WL 1429630 at *3. The prosecutor did not improperly vouch for the truth of the police witnesses

or imply that he had an special knowledge regarding the integrity of the police department. The state court's conclusion that this was a fair question is reasonable.

Next, Petitioner argues that the prosecutor commented negatively on Petitioner's decision to proceed to trial when, during *voir dire*, he engaged in the following exchange with a prospective juror:

Prosecutor: ... [H]as anyone in your family or someone close to you, which includes yourself, had any contact with the police in an enforcement way in say the last four to five years?

Prospective Juror: As far as a ticket or anything?

Prosecutor: Anything.

Prospective Juror: Yes. I had a ticket once about three years ago for an open container.

\*\*\*

Prosecutor: ... [W]hat was the outcome of it?

Prospective Juror: The outcome of it was is I was guilty of having an open container. I pled guilty and I paid the ticket.

Prosecutor: Do you think that people who are charged with crimes and they know that they're guilty, apparently you felt in this case, that they should step up and take responsibility for their actions or do you think that they should always just drag out the process and see what they can get?

Prospective Juror: I don't know. I think that if you do something then you should be able to admit it. Or – if you didn't do it, or if I wasn't guilty I would have fought it.

Prosecutor:     Okay. Thanks for your answer.  I appreciate it.

2/14/05 Tr. at 112-13 (ECF No. 9-4, Pg. ID 396-97.

The Michigan Court of Appeals held that, considered in context, the prosecutor's remarks were not improper. *Meridy*, 2007 WL 1429630 at *3.  The state court noted that the prosecutor's questions were not directed at Petitioner and did not denigrate Petitioner or vouch for his guilt. *Id.*  Instead, the remarks, were a "general query as to whether the jury believed that people should assume responsibility for their actions." *Id.*  It is improper for a prosecutor to argue that a defendant's refusal to plead guilty evidences a failure to take responsibility for his or her actions. *See United States v. Ochoate-Zarate,* 540 F.3d 613, 617-18 (7th Cir. 2008); *United States v. Smith*, 934 F.2d 270, 275 (11th Cir. 1991).  Here, the prosecutor did not connect his comments to Petitioner in any way and did not attempt to use Petitioner's decision to proceed to trial as evidence of Petitioner's guilt.  It is clear from the context that the prosecutor's questions were designed to uncover any bias the prospective juror may have had based upon his prior experience with law enforcement.  The Court finds the Michigan Court of Appeals' decision denying this claim is neither contrary to nor an unreasonable application of Supreme Court precedent.

Next, Petitioner argues that the prosecutor engaged in misconduct by

referencing the possibility that witnesses might be reluctant to testify and asking potential jurors during *voir dire* to consider possible explanations for a witness's reluctance to testify. The Michigan Court of Appeals reasonably found that the prosecutor's comments were relevant to the jury's determination of the witnesses' credibility. *Meridy*, 2007 WL 1429630 at *3. It is not improper for a prosecutor to explore a witness's motive for testifying which may bear upon credibility determinations. *See United States v. Akins*, 237 F. App'x 61, 64 (6th Cir. 2007). The prosecutor's statement that there might be many reasonable explanations for a witness's reluctance to cooperate with police was designed to uncover possible biases potential jurors might have in assessing the credibility of uncooperative witnesses. The court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Petitioner also claims that the prosecutor improperly elicited testimony from Petitioner's cousin, Brandon Hipps, about whether Petitioner denied shooting the victim. The Michigan Court of Appeals did not directly address this question, but generally found no prosecutorial misconduct. The state court's denial of this claim is entitled to deference under § 2254(d), because where a state court denies a claim on the merits but without explanation, a habeas court must nevertheless afford

deference to the state court's decision (rather than just its reasoning). *Harrington*, 562 U.S. at 102. The record shows that Hipps testified that Petitioner was at his own home at the time of the shooting. Hipps also testified that he never heard Petitioner deny being the shooter. This contradicted Hipps' statement to police. Several months after the shooting, police interviewed Hipps about the murder. During the recorded interview, Hipps stated that Petitioner denied shooting the victim. The trial court allowed a portion of the taped interview to be played for the jury as impeachment evidence. Petitioner fails to show how the prosecutor's question regarding this impeachment evidence was improper.

Petitioner argues that the prosecutor improperly argued in closing argument that no witnesses could corroborate Petitioner's story that Glenn Reed had a gun. In fact, two witnesses did testify that Reed had a gun. The Michigan Court of Appeals found that the prosecutor's argument was a misstatement of the evidence but found the error harmless. *Meridy*, 2007 WL 1429630 at *5.

Although a prosecutor is allowed "to argue reasonable inferences from the evidence," *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), he or she is not permitted to misstate the evidence. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002), citing *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001). The Court applies the harmless error standard to determine whether prosecutorial

misconduct warrants habeas corpus relief. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979). On habeas review, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).

The trial court instructed the jurors that the attorneys' arguments were not evidence and that the jurors should base their verdict only on the admissible evidence. Jurors are presumed to follow their instructions. *United States v. Olano*, 507 U.S. 725, 740 (1993). *Darden* allows that jury instructions may cure potential misconduct. *See Darden*, 477 U.S. at 182 (finding significant that the trial court "instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence"). In addition, the prosecutor's misstatement of the evidence was brief and isolated. It was not the primary focus of the closing argument. The Michigan Court of Appeals' decision that Petitioner was not harmed by the error was reasonable.

Finally, Petitioner claims that the cumulative effect of the prosecutor's errors denied him his right to a fair trial. The only proven error is the prosecutor's misstatement regarding testimony about whether Glenn Reed carried a gun. As

discussed, the state court's conclusion that the error was harmless was reasonable. The remaining meritless individual claims of error cannot by accumulation create a constitutional infirmity. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) ("[T]he accumulation of non-error cannot collectively amount to a violation of due process.").

### C.    Claim Three: Jury Instructions and Jury Instruction Form

In his third claim for relief, Petitioner argues that the jury instructions and jury verdict form did not give the jury the option of finding Petitioner not guilty of second-degree murder. The relevant portion of the jury verdict form read:

POSSIBLE VERDICTS: COUNT 1

You may return only one verdict on this count. Mark only one box.

___ Not Guilty

___ Guilty of First-Degree Premeditated Murder

___ Guilty of the Lesser Offense of Second-degree Murder

3/12/12 Op. & Ord. Denying Def.'s Mot. for Relief from Judgment at 14 (ECF No. 26-9).

The jury was also instructed:

The defendant is charged with three counts. ...

You may find the defendant guilty of all or any combination of these counts. Guilty of the less serious crime of second-degree murder on

18

Count I, or not guilty. I have prepared a verdict form listing the possible verdicts. And it is as follows: The People of the State of Michigan vs. Edwin Dantrel Meridy, possible verdicts, on Count I, you may mark only one box on this count. Either not guilty or guilty of first-degree premeditated murder, or guilty of the lesser offense of second degree murder.

2/18/05 Tr. at 1196-1197 (ECF No. 9-8, Pg. ID 1481-82).

Petitioner raised this claim for the first time in his motion for relief from judgment in the trial court. The trial court reviewed this claim for plain error because Petitioner failed to raise this claim on direct review. 3/12/12 Op. & Ord. at 13 (ECF No. 26-9, Pg. ID 2722). The trial court held that the jury verdict form was not improper because it allowed the jury to return a general not guilty verdict. *Id.* at 15 (Pg. ID 2724).

To obtain habeas relief based on an allegedly improper jury instruction, a petitioner must show that the instructions, taken as a whole, were "so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008), quoting *Austin v. Bell*, 126 F.3d 843, 846–47 (6th Cir. 1997). The issue in the present case is not whether the verdict form or jury instruction was undesirable or erroneous under Michigan law, but rather whether the verdict form instruction, by itself, so infected the entire trial that the resulting conviction violated due process. The jury was correctly instructed in this case that it could find Petitioner not guilty as to both first-degree murder and second-degree murder

19

both during jury instructions and in the plain text of the verdict form. Nothing in the instructions or verdict form could be read to mean that the jury did not have the option of finding Petitioner not guilty of second-degree murder. The state court, therefore, reasonably rejected this claim.

### D.     Claim Four: Ineffective Assistance of Counsel

Petitioner argues that he was denied the effective assistance of trial and appellate counsel. He argues that trial counsel was ineffective in these ways: (1) failing to object to prosecutorial misconduct; (2) failing to investigate the case; (3) failing to move to reopen the proofs or move for a mistrial upon learning of a witness's alleged statement that she had testified under duress, and (4) failing to object to the jury instructions and jury verdict form.

The "clearly established law" for purposes of reviewing ineffective assistance of counsel claims under the AEDPA is *Strickland v. Washington*, 466 U.S. 668 (1984). *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). The two-pronged *Strickland* test requires a showing of deficient performance and resulting prejudice. *Id.* at 687. A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment." *Id.* at 687.

Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted). When evaluating the state court's resolution of Strickland's performance requirement, federal courts must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 13 (2013), quoting *Cullen v. Pinholster*, 563 U.S. 170 (2011).

First, Petitioner argues that his attorney was ineffective in failing to object to numerous instances of prosecutorial misconduct. The Michigan Court of Appeals found this claim meritless because Petitioner suffered no prejudice from any alleged misconduct. *Meridy*, 2007 WL 1429630 at *6. As discussed, all but one of the alleged instances of misconduct failed to rise to that level. With respect to the prosecutor's misstatement of fact in closing argument, the Michigan Court of Appeals found the mistake harmless. Where, as here, Petitioner has failed to show

that this harmless-error determination was unreasonable, he cannot show that counsel was ineffective for failing to object to the prosecutor's error.

Second, Petitioner argues that counsel was ineffective in failing to properly investigate the case. Petitioner, however, fails to provide any specific information as to what counsel could have or should have done, but failed to do. This conclusory allegation is insufficient to sustain an ineffective assistance of counsel claim. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012) ("[C]onclusory and perfunctory ... claims of [ineffective assistance of counsel] are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief.").

Next, Petitioner argues that counsel was ineffective in failing to move to reopen the proofs or for a mistrial regarding the testimony of Sonya Bridgeman. During Petitioner's trial, Bridgeman testified that she saw Petitioner running from the housing projects after the shooting. She also testified that shortly before her scheduled testimony, an associate of Petitioner's warned her that she would end up dead if she testified against Petitioner. After the jury had been deliberating for approximately three hours, defense counsel was informed that Bridgeman was being held at the county jail on unrelated charges. Defense counsel learned that Bridgeman told some individuals at the jail that the police threatened her before

she took the stand in Petitioner's case.  2/18/05 Tr. at 1204 (ECF No. 9-8, Pg. ID 1489).  The prosecution informed the trial court that the officer in charge of the criminal case against Bridgeman indicated that Bridgeman was not offered a deal on her pending charges for testifying and no one threatened or coerced her into testifying.  *Id.* at 1205 (ECF No. 9-8, Pg. ID 1490).  The trial court determined that there was no need to reopen the proofs. *Id.*

Approximately eight months after the trial, Bridgeman executed a notarized letter dated November 18, 2005, stating that two Benton Harbor police officers told her that they would dismiss a drug warrant against her if she testified that she saw Petitioner running from the housing project and that he told her not to enter the projects because they were shooting.  *See* 11/18/2005 Letter from Sonya Bridgeman (ECF No. 22, Pg. ID 2257).  She wrote that her testimony against Petitioner was false and that one of the police officers, Officer Takemoto, placed money into her jail account in exchange for her testimony.  *Id.*

On March 28, 2006, the trial court held a hearing on Petitioner's motion for new trial which raised the claim that police threatened and coerced Bridgeman into testifying against Petitioner.  Petitioner's wife, Marshetta Meridy, testified that she served Bridgeman with a subpoena to appear for the hearing, but Bridgeman did not appear.  3/28/06 Tr. at 40-41 (ECF No. 9-11, Pg. ID 1586-87).  She also

testified that Petitioner's aunt prepared and typed Bridgeman's letter-affidavit. *Id.* at 43 (Pg. ID 1589). Loree LaFlex, the Berrien County inmate accounting clerk, testified that during the time Bridgeman was incarcerated at the Berrien County Jail, seven deposits were made to Bridgeman's jail account. 3/28/06 Tr. at 71 (ECF No. 9-11, Pg. ID 1617). The deposit receipts indicated the deposits were made by Willie Thompson and Consuela. *Id.* at 74 (ECF No. 9-11, Pg. ID 1620). LaFlex testified that nothing in Bridgeman's account indicated that Officer Takemoto deposited money into Bridgeman's account. *Id.* Berrien County Deputy Sheriff Karen Miller testified that she was the employee charged with tracking the location of inmates in the Criminal Justice Computer System. *Id.* at 76-77 (ECF No. 9-11, Pg. ID 1622-23). Miller testified that, on February 16-18, 2005 (the days immediately preceding Bridgeman's trial testimony), Bridgeman was housed in a unit with Charleccia Meridy, Petitioner's cousin. *Id.* at 79, 85 (ECF No. 9-11, Pg. ID 1625, 1631). The prosecutor who tried Petitioner's case, Jeff Rhoa, testified that Bridgeman was crying before and during her trial testimony because she was frightened of testifying. *Id.* at 101 (ECF No. 9-11, Pg. ID 1647). The trial court denied the motion on May 19, 2006, reasoning:

> Ms. Bridgeman's affidavit is not sufficiently credible evidence that she has recanted her trial testimony and, standing alone, does not merit a new trial. Defendant admits in his brief that her testimony was useful at trial for impeachment, not because it incriminated Defendant.

> Ms. Bridgeman was clearly frightened when she testified at trial. She was subsequently jailed in an area where one of Defendant's relatives had access to her. She did not type the affidavit recanting her testimony for herself, rather it was prepared by people associated with Defendant. She was provided the affidavit by people associated [with] Defendant. She was also served with a subpoena by people associated with Defendant. Additionally, the evidence supporting the reason for her purported perjury, as indicated in the affidavit, is refuted by county records.

*See* Excerpt of 5/19/06 Order Denying Motion for New Trial (ECF No. 9-12, Pg. ID 1743).

On direct appeal, the Michigan Court of Appeals held that Petitioner's defense counsel was not ineffective for failing to move to reopen proofs or move for a mistrial on the basis of Bridgeman's statement that she testified under police threat or coercion. *Meridy*, 2007 WL 1429630 at *6. The state court reasoned that, at that point, Bridgeman had not yet recanted her trial testimony, but merely expressed remorse for testifying. *Id.* In addition, reopening proofs would not be without risk. There was evidence that Bridgeman had been threatened by Petitioner's associates prior to her testimony. Reopening proofs would provide the opportunity to elicit more information about the threats and the connection to Petitioner. *Id.* In light of these considerations, the Michigan Court of Appeals held that Petitioner failed to rebut the presumption that counsel acted with reasonable trial strategy. *Id.*

Petitioner fails to show that the state court's denial of this claim was contrary to or an unreasonable application of *Strickland*. There were many troubling aspects to Bridgeman's alleged change of heart. She was incarcerated with Petitioner's cousin in the days preceding her alleged jailhouse statement that police threatened her to convince her to testify against Petitioner. She also testified at trial that, prior to her trial testimony, one of Petitioner's associates threatened her in an attempt to persuade her not to testify. It would have been reasonable for defense counsel to conclude that reopening the proofs would likely refocus the jury's attention on attempts to interfere with Bridgeman's incriminating testimony. While another attorney may have concluded that reopening the proofs was worth the risk, it cannot be said that defense counsel's decision not to do so was objectively unreasonable or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Finally, Petitioner argues that defense counsel was ineffective in failing to object to the jury instructions and jury verdict form. As discussed above, the trial court held the jury instructions and jury verdict form adequate and this Court found the decision reasonable. Petitioner therefore cannot show that defense counsel was ineffective in failing to raise a meritless objection. Habeas relief is denied.

### E.    Claim Four: Newly-Discovered Evidence

Finally, Petitioner argues that newly discovered evidence shows that his conviction was achieved through the use of perjured testimony by two witnesses, Sonya Bridgeman and Izear Hall, and that he is actually innocent. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prove this claim, a defendant must show that (1) the evidence the prosecution presented was false; (2) the prosecution knew it was false; and (3) the false evidence was material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir.1992). Petitioner fails to satisfy his burden.

First, the Court considers the testimony of Sonya Bridgeman. As discussed above, Bridgeman's affidavit was prepared by Petitioner's aunt and Bridgeman testified at trial that she had been warned by associates of Petitioner that she should not testify against him. In light of these circumstances, Bridgeman's affidavit is simply insufficient to show that her trial testimony was false.

Second, Petitioner submits an affidavit of Izear Hall. At Petitioner's trial, Izear Hall identified Petitioner as the shooter of the victim. He testified that he saw

Petitioner carrying a handgun and chasing after the victim after shooting the victim twice. In his affidavit, dated September 11, 2009, Hall states that he was forced by Benton Harbor police to be a witness against Petitioner. *See* 9/11/09 Affidavit of Izear Hall, Jr. (ECF No. 22, Pg. ID 2271-72). Contrary to his trial testimony, Hall states that, on the night of the murder, he heard gunshots but did not see anyone with a gun. *Id.* Further, Hall states that Petitioner was at the housing projects on the night of the shooting, but left after arguing with the victim. *Id.* At a December 14, 2011 evidentiary hearing on Petitioner's motion for relief from judgment, Hall acknowledged that he met with the prosecutor on August 3, 2011, and denied seeing the affidavit before the prosecutor showed it to him. See 12/13/11 Tr. at 17 (ECF No. 26-6, Pg. ID 2616). When questioned about his statements to the prosecutor, Hall stated that the content of the affidavit was truthful. The trial court then advised Hall of his *Miranda* rights and allowed him to consult with an attorney. *Id.* at 25 (Pg. ID 2624). After consulting with counsel, Hall exercised his right to remain silent. *Id.* at 43-44 (Pg. ID 2643-44). Following the hearing, the trial court issued an order denying the motion for relief from judgment, finding Hall's recanting affidavit "suspect and inherently unreliable." *See* 3/12/12 Order at 11 (ECF No. 26-9, Pg. ID 2720).

Hall's affidavit warrants the extreme suspicion typically afforded recanting

affidavits and witnesses by the courts. *Byrd v. Collins*, 209 F.3d 486, 508 n.16 (6th Cir. 2000). *See also Welsh v. Lafler*, No. 10-1467, 444 F. App'x 844, 850 (6th Cir. 2011) (trial witness's sworn recantation must be viewed with caution); *Bower v. Curtis*, No. 03-1821, 118 F. App'x 901, 908 (6th Cir. Dec. 17, 2004) ("The recanting of trial testimony by prosecution witnesses is typically viewed with the 'utmost suspicion.'") (internal quotation omitted). The affidavit contradicts his sworn trial testimony. It was executed approximately four years after the trial. Hall variously claimed to have no knowledge of the affidavit (during 8/3/11 meeting with the prosecutor), vouched for the truth of the affidavit (during 12/14/11 evidentiary hearing), and then exercised his right to remain silent (also during 12/14/11 evidentiary hearing). These circumstances essentially nullify any value of the affidavit to Petitioner's case. The trial court's decision denying Petitioner's claim that Hall perjured himself at trial is amply supported in the record.

Finally, to the extent that Petitioner raises a free-standing actual innocence claim, he fails to state a claim upon which relief may be granted. Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506

U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Bowman v. Haas*, No. 15-1485, 2016 WL 612019, *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding); *Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge . . .Given that [petitioner] alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable . . . and, accordingly, does not serve as a ground for habeas relief."). Consequently, Petitioner's claim that he is actually innocent and has newly-discovered evidence

to prove his innocence fails to state a claim upon which habeas relief can be granted.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the Court's disposition of the claims raised in this petition. The Court denies a COA.

## V. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus

and a certificate of appealability are **DENIED**.

<div style="margin-left: 30%;">
S/Denise Page Hood                      

Denise Page Hood

Chief Judge, United States District Court
</div>

Dated: July 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2017, by electronic and/or ordinary mail.

<div style="margin-left: 30%;">
S/LaShawn R. Saulsberry                 

Case Manager
</div>